IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **SHERRY STUDLI,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL No. 12-cv-1093-JKB |
| **CHILDREN AND YOUTH SERVICES,** *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Sherry Studli ("Plaintiff") brought this suit against Children and Youth Services ("CYS"), Judge John Cascio, Judge Eugene Fike, Office of Children, Youth and Families,[1] Somerset County Commissioners James C. Marker, Brad Cober and Pamela A. Tokar-Ickes, and Child Protective Services of Cumberland, Maryland ("CPS") (collectively, "Defendants") alleging claims under the "Parental Rights and Responsibilities Act," the Fourteenth Amendment to the U.S. Constitution and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq*. Now pending before the Court are Defendants' motions to dismiss (ECF Nos. 10, 16, 23), Defendants' motion for a pre-filing injunction (ECF No. 10) and Plaintiff's motion for entry of default judgment against CPS. The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below, the Defendants' motions will be GRANTED and Plaintiff's motion will be DENIED.

---

[1] Plaintiff incorrectly identified this defendant as "Children and Youth and Families Regional Office."

1

I.     BACKGROUND

On September 22, 2005, Plaintiff brought suit in the U.S. District Court for the Western District of Pennsylvania against CYS, Judge John Cascio, Judge Eugene Fike, Office of Children, Youth and Families, Somerset County Commissioners James C. Marker, Brad Cober and Pamela A. Tokar-Ickes (the "Pennsylvania Defendants").  (Pa. Defs.' Br. Ex. E ("Pa. Compl.", ECF No. 11-5.)[2]  As stated in her amended complaint in that action, Plaintiff alleged that from 2001 through at least February 2006, the Pennsylvania Defendants illegally removed her six children from her custody and misappropriated funds meant for the care of the children. (Pa. Defs.' Br. Ex. F ("Pa. Am. Compl.") ¶ 18, ECF No. 11-6.)  Plaintiff sought relief for, among other things, violations of her rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution.  (*Id.* ¶¶ 34-36.)  In a series of decisions, the district court dismissed the claims against some of the defendants and granted summary judgment in favor of CYS and Somerset County.  *Studli v. Crimone*, No. 05 Civ. 374J, 2007 WL 4233161 (W.D. Pa. November 28, 2007); *Studli v. Crimone*, No. 05 Civ. 374J, 2006 WL 3052490 (W.D. Pa. October 23, 2006); *Studli v. Crimone*, No. 05 Civ. 374J, 2006 WL 1878924 (W.D. Pa. July 6, 2006); *Studli v. Children & Youth Servs.*, No. 05 Civ. 374J, 2006 WL 1233708 (W.D. Pa. May 9, 2006). The Third Circuit affirmed the district court's grant of summary judgment.  *Studli v. Children & Youth & Families Cent. Reg'l Office*, 346 Fed. App'x. 804, 808 (3rd Cir. 2009).

On February 1, 2012, Plaintiff filed a complaint against the Pennsylvania Defendants in the U.S. District Court for the Northern District of West Virginia, making allegations substantially similar to those at issue in this case.  (Pa. Defs.' Br. Ex. C, ECF No. 11-3.)  On

---

[2] "When entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact."  *Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006).

March 15, 2012, the court dismissed that case for lack of personal jurisdiction. *Studli v. Children & Youth Services*, No. 12 Civ. 008 (JPB), (N.D.W. Va. March 15, 2012).

On April 1, 2012, Plaintiff filed her complaint with this Court. Plaintiff alleges that Defendants illegally removed her six children from her custody and mistreated the children while they were out of her custody. (Compl. ¶¶ 1(C), 3.) She also alleges that the Pennsylvania Defendants "[h]ave started a business in taking illegal custody of Pennsylvania children." (Compl. ¶ 1(A).) In addition, although the complaint is not entirely clear, she appears to allege that CPS has worked with the Pennsylvania Defendants to prevent Plaintiff from working as a child care provider in Maryland. (*See id.* ¶¶ 1(F), 1(G).)

## II.     LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

A plaintiff filing *pro se* is held to a "less stringent standard[]" than is a lawyer, and the court must liberally construe his claims, no matter how "inartfully" pled. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *accord Brown v. N.C. Dept. of Corr.*, 612 F.3d 720, 724 (4th Cir. 2010) (observing that liberal construction of a complaint is particularly appropriate where a *pro se* plaintiff alleges civil rights violations). However, even a *pro se* complaint must meet a minimum threshold of plausibility. *See, e.g., O'Neil v. Ponzi*, 394 Fed. App'x. 795, 796 (2d Cir. 2010).

### III.   ANALYSIS

The vast majority of the factual allegations in the complaint are identical or nearly identical to factual allegations in the Pennsylvania action. (*E.g., compare* Compl. ¶ 1 *with* Pa. Compl. ¶ 1; *compare* Compl. ¶ 1(A) *with* Pa. Am. Compl. ¶ 20; *compare* Compl. ¶ 1(B) *with* Pa. Compl. ¶ 2; *compare* Compl. ¶¶ 1(C)-(E) *with* Pa. Compl. ¶ 1(A)-(C); *compare* Compl. ¶¶ 3(A)-(G) *with* Pa. Compl. ¶¶ 4(A)-(G); *compare* Compl. ¶ 5 *with* Pa. Compl. ¶ 5.) There are five allegations in the complaint that do not clearly correspond with allegations in the Pennsylvania action:

- (1) that Defendants "[tried] to stop [Plaintiff's] employment doing child care for a child that resided in Maryland" (Compl. ¶ 1(B));

- (2) that CYS committed "several [malicious] acts of mail fraud" by "[a]ttempting to falsify Back Round information about [Plaintiff,] sending it to Child Protective Services Cumberland, Maryland" (Compl. ¶ 1(F));

- (3) that CYS "is a corrupt organization acting as an enterprise under appearances of legality. 18 USC 1961 etc." (Compl ¶ 1(F));

- (4) that "Defendants had tried to stop [Plaintiff] from employment doing child care for a child that resided in Maryland. Maryland child protective services requested for a child abuse clearance from Pennsylvania Children and Youth Services Somerset (instead) of Somerset Children and Youth Pennsylvania sending the clearance certificate they sent a letter to Maryland Child Protective Services that was negative towards [Plaintiff] trying to prevent [Plaintiff] from getting paid. [Plaintiff] requested

4

> a Child Abuse clearance certificate from Pennsylvania and received one that clearly states that [Plaintiff] had and ha[s] no record in Pennsylvania of child abuse or neglect" (Compl. ¶ 1(G)); and

- (5) "[t]hat Children and Youth Services of Somerset County, Pennsylvania crossed state lines to [perform] Home Inspections on [Plaintiff's] home in Cumberland, and Grantsville Maryland.  After [Plaintiff] had home study done from Child Protective Services from Cumberland and Grantsville, Maryland. Child Protective Services from Cumberland and Grantsville, Maryland. allowing the illegal home inspections and invasion of privacy" (Compl. ¶ 2).

The rest of the allegations in the complaint are identical or nearly identical to allegations in the complaint and amended complaint in the Pennsylvania action.

### A. Claims Against the Pennsylvania Defendants in Connection with the Removal of Plaintiff's Children Between 2001 and February 2006

Plaintiffs' claims against OCYF, CYS and the Somerset County Commissioners in connection with the removal of her children from her custody between 2001 and February 2006 are barred as *res judicata*.  "For *res judicata* to prevent a party from raising a claim, three elements must be present: '(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action.'" *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (quoting *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990)).

In the Fourth Circuit, causes of action are identical for the purposes of claim preclusion when they "arise[] out of the same transaction or series of transactions." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) (quoting *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999)).  "The expression 'transaction' in the claim preclusion context 'connotes a natural grouping or common nucleus of operative facts.'" *Pittston*, 199 F.3d at 704. All of Plaintiff's allegations relating to the removal of her children from her custody are identical or nearly identical to allegations made in the Pennsylvania action.  Therefore, her claims based

5

on these allegations are based on the same cause of action, and they are barred by *res judicata* to the extent that they were resolved by a final judgment on the merits in a prior suit concerning the same parties.

Plaintiff's claims against the Office of Children, Youth and Families ("OCYF") in connection with the removal of her children are barred as *res judicata*. These claims were dismissed with prejudice by the district court in the Pennsylvania action. *Studli*, 2006 WL 1233708, *5. A dismissal with prejudice is generally a final judgment on the merits. *See Assa'ad-Faltas v. President of S.C. Univ.*, 291 Fed. App'x. 534, 536 (4th Cir. 2008) (citing *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005)).

Plaintiff's claims against CYS, Somerset County and the Somerset County Commissioners[3] in connection with the removal of her children are also barred by *res judicata*. These claims were finally decided on summary judgment in the Pennsylvania action and affirmed by the Third Circuit. *Studli*, 346 Fed. App'x. at 814. "For purposes of *res judicata*, a summary judgment has always been considered a final disposition on the merits." *See Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 n.3 (4th Cir. 1984) (internal citation omitted).

Defendants have not demonstrated that Plaintiff's claims against Judge Cascio and Judge Fike (the "Judicial Defendants") are barred by *res judicata*. The trial court in the Pennsylvania action dismissed these claims without prejudice. *Studli*, 2006 WL 1233708, at *5. The Third Circuit does not appear to have considered the trial court's dismissal of these claims. Defendants have offered the Court no authority for the proposition that the dismissal of claims without prejudice can constitute a final decision on the merits for the purposes of *res judicata*.

---

[3] As was the case in the Pennsylvania action, the allegations in the complaint do not suggest that the Commissioners were directly involved in any of the alleged wrongs. *See Studli*, 2006 WL 1233708, *6. Therefore, the Court interprets the complaint to assert claims against the Commissioners only in their official capacity.

However, the Judicial Defendants have absolute judicial immunity against Plaintiff's claims for money damages. A judge has absolute immunity from claims arising out of judicial actions, unless the judge lacks subject matter jurisdiction. *See Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). As was the case in the Pennsylvania action, Plaintiff has not pled any facts to suggest that the Judicial Defendants lacked subject matter jurisdiction over the proceedings or engaged in anything other than a judicial act. *See Studli*, 2006 WL 1233708, *5. Therefore, Plaintiff's claims against the Judicial Defendants will be dismissed.

### B. Claims Against CPS

Plaintiff's claims against CPS are barred by the Eleventh Amendment. States enjoy immunity from suits for damages under the Eleventh Amendment to the U.S. Constitution, and that protection extends to arms of the state. *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977). CPS asserts that it is part of a local department of social services, organized pursuant to Maryland Code of Human Services § 3-201, "which is in turn a part of the Maryland Department of Human Resources and therefore an arm of the State of Maryland." (CPS Br. at 3, ECF No. 23-1.)

At least two courts, including the Fourth Circuit, have held that a similar department in another Maryland county is a state agency. *See Keller v. Prince George's Cnty.*, 923 F.2d 30, 32 (4th Cir. 1991); *Lowery v. Prince George's Cnty.*, 960 F. Supp. 952, 954-55 (D. Md. 1997) (holding claims against CPS employees were barred by Eleventh Amendment sovereign immunity). Both of those decisions relied heavily on affidavits reflecting that the vast majority of the department's funding came from the state and federal governments, and CPS has not submitted similar affidavits in this case. However, in the years since these opinions, the Supreme Court has emphasized that the monetary impact of a judgment is not the only policy

underlying the Eleventh Amendment.  *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997).  "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities."  *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).  Given the Supreme Court's de-emphasis of the financial effects of a judgment, the fact that CPS is organized pursuant to state law, and the Fourth Circuit's holding in *Keller*, CPS is immune from suit.

### C.  Additional Claims Against CYS

The complaint fails to state a claim against CYS for which relief can be granted.  Plaintiff identifies three bases for relief:  the "Parental Rights and Responsibilities Act," the Fourteenth Amendment to the U.S. Constitution and RICO.  Plaintiff has not provided a citation to the Parental Rights and Responsibilities Act, and, as the district court explained in the Pennsylvania action, there is no federal law by that name.  *Studli*, 2006 WL 1233708, at *2.  Therefore, any claims under this act are dismissed with prejudice.

The allegations in the complaint that are not duplicative of the allegations in the Pennsylvania action do not state a claim under § 1983 for violations of Plaintiff's Fourteenth Amendment rights.  Absent naked legal conclusions, Plaintiff's new allegations are that: (1) CYS sent false background information about Plaintiff to CPS; (2) CYS sent a letter to CPS containing negative information about Plaintiff in an effort to prevent Plaintiff from being employed as a child care provider; and (3) CYS inspected Plaintiff's home in Maryland.[4]  In order to state a claim against a municipality under § 1983, Plaintiff must allege that a municipal

---

[4] It is possible that these allegations arise from the same transaction or series of transactions as the claims in the Pennsylvania action. (*See, e.g.,* Pa. Compl. ¶ 3 ("[CYS] crossed state lines to perform Home Inspections on my home in Grantsville, Maryland.").)  However, it is impossible to determine from the face of the complaint whether these allegations are new or recycled, or whether the alleged incidents occurred before or after the previous lawsuit. At least some of the allegations, including the alleged home inspection in Cumberland, Maryland, appear to be new. Therefore, dismissal on the basis of *res judicata* would be inappropriate at this time.

policy or custom caused the injury. *Walker v. Prince George's Cnty.*, 575 F.3d 426, 431 (4th Cir. 2009) (affirming dismissal for failure adequately to plead § 1983 claim) (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)). Plaintiff has not alleged that CYS sent information to CPS and inspected Plaintiff's home in Maryland in furtherance of a municipal policy or custom, so she has failed to plead a claim under § 1983 for which relief can be granted.

The allegations in the complaint also do not adequately plead a civil RICO claim, which has four essential elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 Fed. App'x. 257, 258 (4th Cir. 2011) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see* 18 U.S.C. § 1962(c). Plaintiff alleges that the RICO claim is predicated on "several [malicious] acts of mail fraud" by CYS, including sending false background information and a negative letter about Plaintiff to CPS. (Compl. ¶¶ 1(F), 1(G).)[5] Assuming these allegations are true, Plaintiff has failed to plead a pattern of racketeering activity, which requires that the racketeering predicates amount to or pose a threat of continued criminal activity. *Prof'ls, Inc. v. Berry*, 959 F.2d 231 (Table), *2 (4th Cir. 1992). Where a complaint, like the complaint in this case, alleges a RICO violation on the basis of a closed period of repeated conduct rather than conduct that "by its nature projects into the future," continuity requires "a series of related predicates extending over a substantial period of time" and reflecting "long-term criminal conduct." *See H.J. Inc. v. Nw. Bell Tel. Co.*, 429 U.S. 229, 241-43 (1989). Plaintiff's specific allegations of two

---

[5] In addition, Plaintiff alleges that CYS has "started a business in taking illegal custody of Pennsylvania children" and "using [c]hildren as a means of profits for [its] business. Which is RICO." (Compl. ¶ 1(A).) Plaintiff made a nearly identical allegation in the Pennsylvania action. (Pa. Am. Compl. ¶ 20.) The nature of RICO claims—specifically, the requirement of continued criminal activity—complicates the *res judicata* analysis. However, to the extent that Plaintiff's RICO claim in connection with this allegation is not barred as *res judicata*, this Court would dismiss the claim for failure to plead facts sufficient to render the allegation plausible.

racketeering predicates and general allegation of "several [malicious] acts of mail fraud" are insufficient to plead a pattern of racketeering activity by CYS.

### D.  Pre-Filing Injunction

The Defendants have requested that the Court enter a pre-filing injunction against the Plaintiff for future claims due to her abuse of the judicial process.  When considering a pre-filing injunction, a court must consider "all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions."  *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004).  In addition, any pre-filing injunction must be narrowly tailored to the specific circumstances at issue.  *Id.*  Plaintiff filed the Pennsylvania action in connection with the removal of her children in September 2005, and she litigated that case until it was resolved by the Third Circuit in September 2009.  In the three years since she lost that case, she has attempted to re-litigate her claims in three different courts.  These lawsuits were duplicative, filed without a good faith basis for pursuing the litigation, and burdensome on the courts and the multiple defendants.  In light of this history, it seems doubtful that mere dismissal of her claims will prevent future duplicative litigation.  Plaintiff is proceeding in this litigation *pro se* and *in forma pauperis*, so it is not clear that monetary sanctions would be either effective or fair. Therefore, the Court will enjoin Plaintiff from filing in the United States District Court for the District of Maryland any future civil actions arising from the removal of her children from her custody between 2001 and February 2006 against any of the Defendants in the Pennsylvania action without first receiving leave from this Court to do so.

## IV.    CONCLUSION

Accordingly, an order shall issue GRANTING Defendants' motions to dismiss (ECF Nos. 10, 16, 23), DENYING Plaintiff's motion for entry of summary judgment against CPS, GRANTING Defendants' motion for a pre-filing injunction, DISMISSING Plaintiff's claims, and CLOSING this case.

Dated this __6th__ day of November, 2012

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge